UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK A. ANTHONY,

          Plaintiff

v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

Civil Action No.: 18-11717
Honorable David M. Lawson
Magistrate Judge Elizabeth A. Stafford

_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 18, 22]**

Plaintiff Mark A. Anthony appeals the final decision of defendant Commissioner of Social Security, which denied his application for supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court **RECOMMENDS** that:

- Anthony's motion [ECF No. 18] be **GRANTED**;
- the Commissioner's motion [ECF No. 22] be **DENIED**; and
- the ALJ's decision be **REMANDED** under sentence four of 42 U.S.C. § 405(g).

I.  **BACKGROUND**

A.  **Anthony's Background and Disability Application**

Born December 30, 1966, Anthony was 48 years old on the application date, March 23, 2015. [ECF No. 14-3, Tr. 59, 67]. He has past relevant work as a painter. [*Id.*, Tr. 67]. Anthony claims disability from lower back pain, left shoulder pain and learning disorders. [ECF No. 14-6, Tr. 170].

After a hearing during which Anthony and a vocational expert (VE) testified, the ALJ found that Anthony was not disabled. [ECF No. 14-2, Tr. 15-38; ECF No. 14-3, Tr. 57-68]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [ECF No. 14-2, Tr. 1-6]. Anthony timely filed for judicial review. [ECF No. 1].

B.  **The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Anthony was not disabled. At the first step, she found that Anthony had not engaged in substantial gainful activity since the application date, March 23, 2015.

3

[ECF No. 14-3, Tr. 59]. At the second step, she found that Anthony had the severe impairments of "learning disorder, attention deficit hyperactivity disorder (ADHD), depression, osteoarthritis of the left shoulder, and degenerative disc disease of the lumbar spine." [*Id.*]. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 59-61].

Between the third and fourth steps, the ALJ found that Anthony had the RFC to perform light work, except that he could "never climb ladders, ropes or scaffolds, and only occasionally climb ramps or stairs," only occasionally stoop, kneel, crouch and crawl, and only "occasionally perform overhead reaching with his left upper extremity." He was also "limited to only simple, routine and repetitive tasks performed in a low stress environment, which is defined as involving only simple work-related decisions; and with little to no changes in work setting or routine." He also "requires the option to alternate between sitting and standing, spending no more than 20 minutes in each position." [*Id.*, Tr. 61]. At step four, the ALJ found that Anthony could not do his past relevant work as a painter. [*Id.*, Tr. 67]. At the final step, after considering Anthony's age, education, work experience, RFC and the testimony of the VE, the ALJ determined that there were jobs in significant numbers that Anthony could perform,

4

including positions as packager, machine tender and line attendant.  [*Id.*, Tr. 68].

## II.   ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Anthony argues the ALJ erred in evaluating the medical opinion evidence and his impairments under Listing 12.11.  Anthony also asserts the ALJ erred in assessing equivalency to the Listing with no medical opinion. Finally, Anthony challenges the ALJ's evaluation of his subjective

5

symptoms. The Court agrees that the ALJ erred in evaluating the medical opinion evidence and in assessing Anthony's impairments under Listing 12.11. Remand is warranted.

**B.**

Anthony contends that the ALJ erred in rejecting the assessments of two examining consultants and instead assigning great weight to the opinion of the nonexamining State Agency consultant. Generally, the agency gives more weight to the opinion of a source who has examined the claimant than to a nonexamining source. *Ealy v. Comm'r of Soc.Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (quoting 20 C.F.R. § 404.1527(d)(1)). And "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the agency] will give that medical opinion." 20 C.F.R. § 404.1527(c)(3).

An ALJ may give greater weight to a nonexamining state consultant's opinion if that opinion "'provides more detailed and comprehensive information that what was available to the individual's'…examining source, or when the nonexamining medical source is 'more consistent…with the record as a whole.'" *Gere v. Comm'r of Soc.Sec.*, 2019 WL 697006, at *2 (E.D. Mich. Feb. 20, 2019) (quoting *Brooks v. Comm'r of Soc.Sec.*, 531 F.

App'x 636, 642 (6th Cir. 2013)) (internal quotation marks and citations omitted).

The reviewing consultant, Rom Kriauciunas, Ph.D., who made his determination months before neuropsychologist Darren Fuerst, Ph.D., examined and tested Anthony, opined that Anthony was "limited to simple, low stress, unskilled work, and had moderate limitations in social interactions." [ECF No. 14-3, Tr. 45, 49-51, 66]. The ALJ gave Dr. Kriauciunas' opinion great weight "because it [was] consistent with the medical evidence of record as a whole." [*Id.,* Tr. 66].

In contrast, the ALJ gave little weight to Dr. Fuerst's opinions that Anthony had marked or severe limitations in most work-related abilities, including understanding, memory, sustained concentration and persistence. [ECF No. 14-9, Tr. 382-83; ECF No. 14-3, Tr.66]. The ALJ determined that "the totality of evidence demonstrates greater mental functioning," based on his years of skilled work as a painter and lack of evidence that his mental capacity had diminished over time. [*Id.*].

Finally, the ALJ gave the opinion of consultative psychiatric examiner L. Imasa, M.D., little weight. [ECF No. 14-3, Tr. 65-66; ECF No. 14-7, Tr. 262-64]. Dr. Imasa's opinion that Anthony could not function on a fully sustained basis was discounted because it appeared inconsistent with her

7

exam observations, Anthony's self-reported daily activities and the treatment evidence. [ECF No. 14-3, Tr. 65-66]. The ALJ also found that Dr. Imasa's opinion was essentially a conclusion about disability, which is an issue reserved to the Commissioner. [*Id.*].

Dr. Fuerst's opinion should have been afforded more weight because he was an examining source whose evaluation was supported by extensive diagnostic testing. *See Gere*, 2019 WL 697006, at *2. Dr. Fuerst administered these tests: Benton Animal Fluency, CFL, Naming, Tokens; Benton Judgment of Line Orientation (JOLO); Hopkins Verbal Learning Test (HVLT); Lateral Dominance Examination; Rey 15 Item Memory Test; Test of Memory Malingering (TOMM); Trail Making Test; Weschler Abbreviate Scale of Intelligence (WASI); Weschler Memory Scale-3 Orientation; Weschler Memory Scale-4 (WMS-4) Logical Memory and Visual Reproductions subtests; Wide Range Achievement Test-3 (WRAT-3); and Wisconsin Card Sorting Test (WCST). [ECF No. 14-7, Tr. 274-75]. Results of the WASI and WRAT tests confirmed that Anthony suffers from a learning disability. The testing established lexical and semantic impairment and impaired confrontation naming. [*Id.*, Tr. 276]. Verbal memory and executive functioning were mild to moderately impaired. [*Id.*]. Anthony performed in the ADHD range on the Test of Variables of Attention

(TOVA), with even his simple attention showing mild to moderate impairment. [*Id.,* Tr. 275-76].

Based on his assessment of Anthony's medical and education records and the testing results, Dr. Fuerst opined that Anthony had marked limitations in his ability to perform detailed instructions, perform activities on schedule and maintain regular attendance, work in coordination with or in proximity to coworkers and supervisors, work in proximity to the general public, interact appropriately with the general public, and understand instructions and respond appropriately to criticism from supervisors. [ECF No. 14-9, Tr. 382-83]. He also noted severe limitations in Anthony's ability to understand and remember detailed instructions, maintain attention and concentration for extended periods of time, sustain an ordinary routine without special supervision, to complete a normal workday without interruptions, to complete a normal work week without interruptions, and to perform at a consistent pace with a standard number and length of breaks. [*Id.*].

Dr. Kriauciunas' opinion was neither "'more detailed or comprehensive' or 'more consistent with the record as a whole'" than the opinion of examining source Dr. Fuerst. *Gere,* 2019 WL 697006, at *3 (quoting *Brooks*, 521 F. App'x at 642) (internal quotation marks and

9

citations omitted). Dr. Kriauciunas completed his determination four months before Dr. Fuerst examined and tested Anthony, so he did not have the benefit of this information in reaching his conclusions. Dr. Fuerst's detailed report and Mental Functional Capacity Assessment (MFCA) were supported by extensive diagnostic testing, none of which the ALJ mentioned despite proclaiming that the "totality of evidence demonstrates greater mental functioning in the claimant." [ECF No. 14-3, Tr. 66].

Dr. Fuerst's opinions are also more consistent with the record as a whole. His opinion that Anthony had more significant limitations in concentration and persistence than those found by Dr. Kriauciunas was consistent with Anthony's education records from Lincoln Park High School, which detailed testing and the results identifying him as learning disabled. [ECF No. 14-6, Tr. 159-68]. Dr. Fuerst's findings are also consistent with Dr. Imasa's examination findings and opinion that Anthony could not function on a fully sustained basis. [ECF No. 14-7, Tr. 262-64]. The ALJ correctly noted that Dr. Imasa's opinion was essentially a finding that Anthony was disabled, which is an issue reserved for the Commissioner. *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010). But Dr. Imasa's opinion is relevant as to which opinion—Dr. Fuerst's or Dr. Kriauciunas's—is more consistent with the record as a

whole. Anthony's homelessness and history of never living independently,[1] and his reports of difficulty interacting with strangers and supervisors are also consistent with the more significant limitations endorsed by Dr. Fuerst. [ECF No. 14-2, Tr. 33; ECF No. 185-92].

In contrast, the ALJ determined that the "totality of the evidence" supported Dr. Kriauciunas' findings of mild to moderate limitations, citing specifically Anthony's ability to function for years as a painter and the lack of a treating source report of significant concentration or social limitations. [ECF No. 14-3, Tr. 65-66]. The ALJ's reliance on Anthony's long work history ignored the fact that Anthony's physical, not mental, limitations prevented him from returning to his past work as a painter. [*Id.*, Tr. 67]. And, according to Dr. Fuerst, Anthony's mental limitations obstruct his ability to adapt and learn the type of jobs he could physically perform. [ECF No. 14-7. Tr. 277]. Dr. Fuerst wrote, "[F]urther education presents difficulties for Mr. Anthony given his learning disability and his diagnosis of ADHD," and he described Anthony's learning disability and ADHD as untreatable, thus "render[ing] successful resolution doubtful." [*Id.*].

---

[1] Anthony's hearing testimony reflects that he has never lived independently; he lived with his mother until her death, then, for a time with an aunt, and has been homeless for the last seven years. [ECF No. 14-2, Tr. 33].

The ALJ's decision that the opinion of nonexamining Dr. Kriauciunas was entitled to greater weight than that of Dr. Fuerst is not supported by substantial evidence. *See Gere*, 2019 WL 697006, at *4. Remand is thus warranted.

## C.

Remand for proper evaluation of examining and nonexamining opinion sources is especially warranted here because crediting the opinion of Dr. Fuerst would result in Anthony meeting Listing 12.11.

> 12.11 Neurodevelopmental disorders ... satisfied by A and B:
>
>> A. Medical documentation of the requirements of paragraph 1, 2, or 3:
>>
>> 1. One or both of the following:
>>    a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or
>>    b. Hyperactive and impulsive behavior ...
>>
>> 2. Significant difficulties learning and using academic skills; or
>>
>> 3. Recurrent motor movement or vocalization.
>
> AND
>
>> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning ...:
>>
>>> 1. Understand, remember, or apply information ...
>>> 2. Interact with others ...
>>> 3. Concentrate, persist, or maintain pace ...
>>> 4. Adapt or manage oneself...

20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ addresses only criteria B, ostensibly accepting that Anthony satisfied at least one subpart of criteria A. The ALJ found that Anthony failed to meet this listing after she determined that Anthony was moderately limited in each area of mental function set out in criteria B. But Dr. Fuerst's assessment reflects an extreme limitation in Anthony's ability to concentrate, persist and maintain pace, and marked limitations in his ability to interact with others and to understand, remember or apply information.[2] If accepted, these limitations would result in a finding that Anthony meets Listing 12.11. [ECF No. 14-9, Tr. 382-83]. Remand for further factual finding and analysis is appropriate.

A court may remand for an immediate award of benefits, but "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Dr. Fuerst's opinions

---

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1,1200E describes this area of mental functioning as "the abilities to learn, recall and use information to perform work activities." It provides these examples: "[u]nderstanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions."

assumed Anthony's ADHD was untreatable based on his history of substance abuse, but his ADHD is being treated with stimulant drugs. [ECF No. 14-9, Tr. 323-37; ECF No. 14-8, Tr. 281-306]. On remand, the impact of this treatment on Anthony's ability to maintain attention and concentration must be assessed and evaluated along with Dr. Fuerst's MFCA.

### D.

Anthony argues that the ALJ erred in evaluating equivalency to Listing 12.11 with no medical opinion on equivalency, contrary to SSR 96-6P. The Commissioner argues that SSR 96-6P, which indeed required a medical opinion on equivalency determinations, was rescinded and replaced by SSR 17-2P, and this is the applicable ruling to consider on the issue of medical opinion for equivalency determination. Although the Court believes the Commissioner is correct on the applicability of SSR 17-2P to this case, it need not make that determination because, even under the standard of the superseding ruling, the ALJ should have obtained a medical opinion on equivalency.

SSR 17-2P states that an ALJ need not obtain evidence from a medical expert on equivalence if "the evidence does not reasonably

support a finding that the individual's impairment(s) medically equals a listed impairment." 2017 WL 3928306, at *4 (SSA March 27, 2017). But the evidence here could reasonably support a finding that the individual's impairment(s) medically equals a listed impairment.[3] First, an examining neuropsychologist opined that Anthony's cognitive and social limitations were extreme and marked so that he actually met the criteria of Listing 12.11. The ALJ rejected the examiner's opinion in favor of that of the nonexamining reviewer, but that reviewer never evaluated Anthony's impairments under Listing 12.11. Finally, although the ALJ did not find Anthony was markedly limited in two of the four provisions of criteria B, she did find that he was moderately limited in all four of those categories. The Court finds that these factors combine to, at least potentially, reasonably support a finding of medical equivalence to Listing 12.11 and thus to support a remand.

## III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that

---

[3] If an individual has an impairment described in the listings, but either does not exhibit one or more of the findings specified in the particular listing, or exhibits all of the findings, but one or more is not as severe as specified in the particular listing, his or her impairment can be found medically equivalent to that listing if there are other findings related to the impairment that are at least of equal medical significance to the required criteria. SSR 17-2P, 2017 WL 3928306, at *2.

Anthony's motion [ECF No. 18] be **GRANTED**; that the Commissioner's motion [ECF No. 22] be **DENIED**; and that this matter be **REMANDED** for further consideration under sentence four of 42 U.S.C. § 405(g).

|  |  |
|---|---|
| Dated: June 18, 2019 | s/Elizabeth A. Stafford<br>ELIZABETH A. STAFFORD<br>United States Magistrate Judge |

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.